```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
───────────────────────────────

LINDY POWERS,

                            Plaintiff,

        -vs-                   **No. 6:11-CV-06319(MAT)**
                                      **DECISION AND ORDER**
LYONS CENTRAL SCHOOL DISTRICT,

                            Defendant.

───────────────────────────────

## I. Introduction

*Pro se* plaintiff Lindy Powers ("plaintiff"), a school counselor formerly employed by defendant Lyons Central School District ("defendant"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Pregnancy Discrimination Act ("PDA") which amended Title VII (see 42 U.S.C. § 2000e(k)), claiming that defendant discriminated against her on the basis of gender, by denying her tenure and forcing her to resign her position.

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendant's motion is granted.

## II. Background

Plaintiff commenced this action, proceeding *pro se*, on June 28, 2011. Doc. 1. Plaintiff was appointed as an elementary social worker with the defendant school district in February 2006. Doc. 44-16, at ¶ 2. Plaintiff's complaint alleges that "[i]n the spring of 2007 [plaintiff's former supervisor Mark Clark] started

to act differently" toward her, and that a coworker, Matthew Cook, told plaintiff that Mr. Clark stated that he "did not think [she] could handle the job because [she] was a woman." Id. at 5. The complaint also alleges that during monthly teacher improvement plan ("TIP") meetings, Mr. Clark stated on "numerous" occasions that plaintiff was not able to restrain her children due to her condition (pregnancy). Id. at 6. Plaintiff alleged that she made the Superintendent aware of this on approximately June 16, 2009, and thereafter, she was "forced to resign." Id. Reading this *pro se* complaint liberally as the Court is required to do (see Corcoran v. New York Power Auth., 202 F.3d 530, 536 (2d Cir. 1999)), the Court construes claims for discrimination and retaliation.

In her deposition, plaintiff testified that she was on maternity leave from March through May 2007, then returned to work part-time through the end of the 2006-2007 school year; she went out on maternity leave again from January through March 2009. Doc. 44-5, at 2-3. As of September 2007, plaintiff was a full-time school counselor. Id. at 3. Plaintiff testified that a female replaced her in the school counselor position after plaintiff resigned, and that the faculty was made up of a majority of women. Id. at 7-8.

Plaintiff testified that school counselors were sometimes required to perform "therapeutic restraints" of children, which required "full-on body contact with a child in what they call a

therapeutic wrap . . . wrapping your arms and your legs around a physically thrashing and violent student." Id. at 4. When asked why she had not performed any therapeutic restraints during either of her pregnancies, plaintiff testified:

> A. My husband and I . . . were talking [*sic*] all precautions to protect myself and to protect our children, and Mr. Clark was aware of that. I did inform him of that when I told him I was pregnant the first time.
>
> Q. So because of your pregnancies you were unable to perform therapeutic restraints?
>
> A. Correct.

Id. Plaintiff went on to testify that she told Mr. Clark that she and her husband "felt it was best that [she] not do any restraining throughout [the] pregnancy to protect [her]self and to not harm [her] unborn child," and that Mr. Clark's response was to congratulate her. Id. at 5.

The record contains several evaluations documenting various deficiencies in plaintiff's job performance, and reflects that plaintiff was placed on a teacher improvement plan ("TIP") during the 2007-2008 school year. In a June 2008 meeting regarding the TIP, Mr. Clark cited a number of issues with her work performance, specifically with plaintiff's attention to student services requests. Id. at 9; Doc. 44-6. Mr. Clark wrote a memo to plaintiff (which was signed by plaintiff and Mr. Clark) which cited a prior, January 2008 meeting in which similar performance issues were discussed. Doc. 44-6. Plaintiff was advised of several measures she

3

was expected to take until her next review, including keeping weekly logs of her contacts and participating in monthly debriefing meetings regarding her progress. Id. The record contains subsequent evaluations for the 2008-2009 school year, documenting continued performance issues. Doc. 44-11 (teacher evaluation forms describing issues in consistency, flexibility, in-service follow through, creative problem solving, interruption of instructional time, and self-directedness).

By letter dated March 31, 2009, Superintendent Richard P. Amundson offered to extend plaintiff's probationary period (which was slated to end June 30, 2009) through February 1, 2010. Doc. 44-7. Mr. Clark attested that he initially conveyed this offer in January 2009. Doc. 44-14, at ¶ 27. This agreement, known as a "Juul agreement," would have waived the District's right to dismiss plaintiff at the end of June 2009 and extended the probationary term through February 1, 1010. Id. at ¶ 28; see generally Juul v. Bd. of Educ., 76 A.D.2d 837, 838 (2d Dep't 1980) (holding that an employee facing tenure denial may agree to extended probationary period and reconsideration of tenure determination at the end of the extension), aff'd, 430 N.E.2d 1319 (1981). Superintendent Amundson noted that plaintiff's TIP would still be in effect when she returned from maternity leave. Id. Plaintiff failed to respond to this offer, and the Superintendent notified her by letter dated April 30, 2009 that he would recommend to the Board of Education

4

that her service be discontinued. Doc. 44-8. By letter dated June 23, 2009, plaintiff resigned. Doc. 44-9.

At plaintiff's request, the Superintendent supplied reasons for not recommending her for tenure. Doc. 44-10. These reasons included the problems with her work performance, which were cited in plaintiff's previous performance evaluations. Id. Plaintiff was also informed of previously reported failures to act on recommendations of supervisory personnel, failures to comply with job description responsibilities, inadequate communication with staff regarding student services requests, and a failure to take initiative regarding job responsibilities. Id. In total, Mr. Clark cited 31 separate deficiencies in job performance. Id.

Matthew Cook, who was one of plaintiff's coworkers during the relevant time period, submitted an affidavit stating that "[a]fter plaintiff was advised that her services be discontinued, she made allegations that she was discirminated against by virtue of her gender." Doc. 44-13, at ¶ 12. Mr. Cook, also the school's Title IX officer, was assigned to investigate plaintiff's initial complaint of discrimination. Id. at ¶ 13. During that investigation, he learned that plaintiff had identified him as a witness and "alleged that [Mr. Cook] told [plaintiff] that Mark Clark had questioned her ability to perform her work because she was a woman." Id. at ¶ 14. Mr. Cook denies that this exchange ever occurred, and denies that Mr. Clark "even indicated to [him] that he questioned [plaintiff's]

ability to perform her job because of her gender." Id. at ¶¶ 15-16. According to Mr. Cook, "while [plaintiff] was under professional scrutiny relative to her performance, [he had] no personal knowledge of any intimidation or harassment on the part of the District representative toward [plaintiff]." Id. at ¶ 18.

Mr. Clark also submitted an affidavit, in which he denied making any discriminatory statements regarding plaintiff and denied taking any discriminatory actions against plaintiff. Doc. 44-14, ¶¶ 15-17. Mr. Clark also pointed out that, during plaintiff's employment, "there were 20 other maternity leaves for employees," and that during that time there were no "complaints relative to pregnancy or maternity leave." Id. at ¶¶ 12, 14. He attested that plaintiff "at no time made any complaint to the District that she was treated unfairly because of her gender or pregnancy." Id. at ¶ 13. Mr. Clark stated that, despite developing a TIP and attempting "active efforts to improve [p]laintiff's performance, [plaintiff] was unable and/or unwilling to meet the expectations of the District." Id. at ¶ 23. According to Mr. Clark, plaintiff never responded to the Superintendent's offer to continue her probationary period until February 1, 2010. Id. at ¶ 25. Instead, as noted above, she resigned her position on June 22, 2009. Doc. 44-9.

Plaintiff submitted motion papers which were apparently intended as a response to defendant's motion and a cross-motion for

summary judgment.[1] Doc. 47. These papers consist primarily of documents from plaintiff's unemployment proceedings, where she made similar allegations to those made in this case. Doc. 47, at 2. The remainder of plaintiff's motion papers consist of evaluation forms already submitted by defendant with its motion.

In the unemployment proceeding, Superintendent Amundson stated that the first he heard of plaintiff's complaint of discrimination was after she had been denied tenure, and he initiated an investigation through his Title IX officer because of the concern about potential retaliation. Id. at 3-4. Also in the unemployment proceeding, a secretary, Thea Hall, stated that she "remember[ed] Mark Clark, principle [*sic*] making a comment to the effect that the claimant couldn't do take downs because she was a woman." Id. at 5. Laura Pyke, union representative, stated that she worked with plaintiff to address perceived issues with her TIP. Id. at 6. Ms. Pyke believed that Mr. Clark "set[] the [plaintiff] up to fail" by making changes and additions to her TIP. Id. However, Ms. Pyke's statement does not allege that he took such action because

---

[1] These papers were submitted on April 20, 2015, ten days past the due date. See docs. 45, 47. Defendant argues that the Court should reject the papers as untimely. Plaintiff, who proceeds *pro se*, is entitled to "special latitude" in filing motion responses, and considering this response was only ten days late, the Court will consider it as if it had been timely filed. See, e.g., Singh v. New York State Dept. of Taxation and Fin., 911 F. Supp. 2d 223, 233 (W.D.N.Y. 2012) (noting district court's "duty not only to liberally interpret *pro se* submissions, but also to give *pro se* plaintiffs 'extra consideration' and 'special latitude' on summary judgment motions") (internal citation omitted).

plaintiff was a woman, but rather, that Mr. Clark took this approach "when he [did not] want someone there." Id. Union president John Lawson stated that he was never advised that plaintiff was being "harassed or discriminated against," but was aware of her contact with the union regarding performance issues. Id. at 7. Mr. Lawson stated that he believed there was a "personality conflict" between plaintiff and Mr. Cook, and Mr. Lawson's response was to advise plaintiff that she "need[ed] to do her job." Id.

**III. Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor." Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is

a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007), quoting Fed. R. Civ. P. 56(c).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." Corcoran, 202 F.3d at 536. However, "proceeding *pro se* does not otherwise relieve [the opposing party] from the usual requirements of summary judgment." Fitzpatrick v. N.Y. Cornell Hosp., 2003 WL 102853, *5 (S.D.N.Y. 2003).

## IV. Discussion

### A.  Discrimination

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," i.e., that there was discriminatory intent. Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, the analysis turns to the burden-shifting McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of

discrimination (or retaliation). See McDonnell Douglas, 411 U.S. at 802, 802 n.13 The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action. See id. at 803-804. The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. See id.

Reading plaintiff's submissions in a light most favorable to her, the Court will assume, without deciding, that she has established her prima facie case. Defendant, however, has produced a legitimate, nondiscriminatory reason for denying plaintiff tenure. Defendant submitted records of plaintiff's repeated evaluations, which documented multiple deficiencies in her job performance. Doc. 44-11. There is no dispute that plaintiff received these evaluations and that she was aware of her placement on a TIP, as plaintiff submitted copies of these evaluations as well. Poor work performance constitutes a legitimate, nondiscriminatory reason for termination. See, e.g., Lynch v. Nat'l Fuel Gas Dist. Corp., 25 F. Supp. 358, 366 (2014).

Plaintiff's submission, however, does not refute defendant's reason by producing any evidence of a pretext. Although plaintiff submitted a statement that she herself made during her unemployment proceeding, which suggests (although it does not explicitly state) that plaintiff received poor evaluations and was placed on the TIP

as a pretext for discrimination, none of her motion papers contain statements from others substantiating such an allegation. Moreover, plaintiff's own statement does not substantively address the allegations of poor work performance nor does it describe how she performed her job in a satisfactory manner. Plaintiff cannot rely solely on her own self-serving statements to overcome her burden on summary judgment. See, e.g., Morales v. NYS Dep't of Labor, 865 F. Supp. 2d 220, 248-49 (N.D.N.Y. 2012), aff'd sub nom., Morales v. New York State Dep't of Labor, Div. of Employment Servs., 530 F. App'x 13 (2d Cir. 2013) ("To defeat summary judgment on the basis of pretext, plaintiff may not rely solely upon her own self-serving and conclusory statements that [her employer] terminated her because of an inappropriate animus.") (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).

The statements submitted by plaintiff from the Superintendent and union representatives do not support an allegation that reports of plaintiff's poor performance were a pretext for Mr. Clark discrimination against her on the basis of gender. At most, a personality conflict is alleged. Moreover, secretary Thea Hall's statement, in which she reported that she heard Mr. Clark "making a comment to the effect that the claimant couldn't do take downs because she was a woman," is actually consistent with plaintiff's own testimony, in which she admitted that she requested that she not perform therapeutic restraints as a result of her pregnancy.

Accordingly, I find that this stray remark is insufficient to support a claim for discrimination. See Dixon v. Int'l Fed'n of Accountants, 416 F. App'x 107, 109-10 (2d Cir. 2011) (quoting, with approval, Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, *even if made by a decision maker*, do not constitute sufficient evidence [to support] a case of employment discrimination.") (emphasis supplied).

Additionally, the evidence that the person hired into the job to replace plaintiff was a woman, that 20 maternity leaves were taken by various women during plaintiff's employment yet none complained of discrimination, and that most of the faculty at plaintiff's school were women, belies plaintiff's conclusory assertions that the decision to deny her tenure was done with discriminatory intent. See Romanello v. Shiseido Cosmetics Am. Ltd., 2002 WL 31190169, at *6 (S.D.N.Y. Sept. 30, 2002) (pretext not present where, among other circumstances, there was evidence that gender discrimination plaintiff was replaced by another woman), aff'd, 71 F. App'x 880 (2d Cir. 2003); Sookdeo-Ruiz v. GCI Group, 2001 WL 121942, *4 (S.D.N.Y. Feb. 13, 2001) (in holding no pretext was shown, noting "the fact that 12 other women employees went on maternity leave [during plaintiff's employment] without negative repercussions"), aff'd 31 F. App'x 17 (2d Cir. 2002); Gordon v. Fenniman, 1998 WL 126062, at *6-7 (S.D.N.Y. Mar. 19, 1998) (finding no evidence of pretext where there was evidence that

the employer historically had accommodated female employees taking maternity leave).

Because plaintiff has not met her burden of overcoming defendant's legitimate, nondiscriminatory reason for her dismissal, defendant is entitled to summary judgment on the discrimination claim.

**B.   Retaliation**

Plaintiff's retaliation claim is also analyzed using the McDonnell Douglas burden-shifting framework. See Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013). A plaintiff makes out a prima facie case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. See Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000). Reading the pleadings in the light most favorable to plaintiff, even assuming plaintiff has established her prima facie case, her retaliation claim fails for the same reason that her discrimination claim fails. Plaintiff has not produced any evidence of a pretext sufficient to rebut defendant's legitimate, nondiscriminatory reason for her dismissal, which was her poor job performance.

Plaintiff alleges, in her motion papers, that she complained about discrimination against her as early as 2007 to Mr. Cook and

to union representatives. Doc. 47, at 2. Taking the evidence in a light most favorable to plaintiff, the Court will assume that this protected activity occurred, although it is noted that the union representatives' statements submitted by plaintiff, as well as Mr. Cook's affidavit, refute that allegation. As to the second element, negative performance evaluations and denial of tenure are adverse employment actions under the retaliation analysis. See Tolbert v. Smith, 790 F.3d 427, 436 (2d Cir. 2015) ("Extending an employment relationship by one year by itself may not qualify as an adverse employment action. But when coupled with the denial of tenure, it is assuredly an adverse employment action."); Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (finding "negative evaluation letters" to constitute adverse employment action in the context of a retaliation claim).

In the absence of direct evidence, causation may be established "indirectly," either: (1) "by showing that the protected activity was followed closely by discriminatory treatment"; or (2) "through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). The Court notes that, under a similar analysis as the discrimination claim, the single overheard remark attributed to Mr. Clark is insufficient to support plaintiff's claim that it is direct evidence of retaliation against her. See, e.g., Alexander v.

14

Bd. of Educ. of City Sch. Dist. of City of New York, 2015 WL 2330126, *5 (S.D.N.Y. May 14, 2015) ("[I]solated and stray remarks, without more, are insufficient to raise an inference of retaliation.").

Other than that stray remark, the only evidence upon which plaintiff relies in terms of causation is a temporal proximity of the protected activity to the adverse actions. "[E]ven if [plaintiff] could successfully establish [her] prima facie case by relying on the temporal proximity between [her protected activity] and termination, it is well-settled that temporal proximity alone is insufficient to overcome an employer's legitimate, nondiscriminatory reason for terminating a plaintiff's employment[.]" Deebs v. Alstom Transp., Inc., 550 F. Supp. 2d 385, 393 (W.D.N.Y. 2008) aff'd, 346 F. App'x 654 (2d Cir. 2009); see Simpson v. New York State Dep't of Civil Servs., 166 F. App'x 499, 500, 502 (2d Cir. 2006) (even where prima facie case can be established through temporal proximity, "without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext").

I find that defendant has come forward with a legitimate, nondiscriminatory reason supporting plaintiff's dismissal, because of her poor job performance. Because plaintiff has not produced evidence of pretext, defendant is entitled to summary judgment on the retaliation claim.

## V. Conclusion

For the reasons stated above, defendant's motion for summary judgment (Doc. 44) is granted in its entirety, plaintiff's cross-motion (Doc. 47) is denied, and the complaint is accordingly dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                          **S/Michael A. Telesca**

                                          HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:   August 12, 2015
        Rochester, New York.